UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **DUNN-McCAMPBELL ROYALTY INTEREST, INC., et al.,** § § § | |
| **Plaintiffs,** § § | **CIVIL ACTION NO. V-06-59** |
| v. § § | |
| **NATIONAL PARK SERVICE, et al.,** § § | |
| **Defendants.** § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is the Defendants' Rule 59(e) Motion to Alter or Amend Judgment (Dkt. No. 52). After considering the motion, the response thereto, and the applicable law, the Court is of the opinion the motion should be denied.

### Discussion

A Rule 59(e) motion "calls into question the correctness of a judgment," *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004), and thus "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Such a motion is not to be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to entry of judgment. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003). Reconsideration of a judgment after its entry is an "extraordinary remedy that should be used sparingly," *Templet*, 367 F.3d at 479, over which a district court has considerable discretion to grant or to deny. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). In exercising its discretion, a district court is under duty to "strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). With this balance

in mind, the Fifth Circuit has made clear that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

The Defendants set forth three arguments aimed at persuading the Court to alter or amend its September 30, 2008 Memorandum Opinion & Order (Dkt. No. 50) and Final Judgment (Dkt. No. 51). As an initial matter, the Court notes that each of the arguments the Defendants proffer were either explicitly or implicitly made prior to entry of judgment, have already been considered by the Court, and are thus precisely the type of issues not to be relitigated or addressed in more detail at this time. On this basis alone, the Court is justified in denying the present motion. For the sake of completeness, however, the Court will address each of the Defendants' contentions in turn.

First, the Defendants maintain that sections 3 and 6 of the Texas Consent Statute only apply to the grantor of the surface estate or its successor in title.[1] In syllogistic form, the Defendants' then

---

[1] As set forth in the Court's Memorandum Opinion & Order, sections 3 and 6 of the Texas Consent Statute, in relevant part, provide the following:

> Sec. 3. The United States of America, through the Secretary of the Interior, is granted permission, *subject to the limitations contained in this Act*, to acquire the area that has been defined as Padre Island National Seashore [pursuant to a deed to be executed forthwith, which will contain the exceptions and reservations delineated in this Act]. . . in consideration of the United States of America agreeing to establish and maintain the [relevant state land] as a National Seashore area . . .
>
> *Said state land shall not be conveyed unless the entire mineral interest is reserved in the state, and unless the right of occupation and use of so much of the surface of the land or waters as may be required for all purposes reasonably incident to the mining, development, or removal of the minerals, is adequately protected.*
>
> In all conveyances of said park property under Sections 3 and 6 hereof to the United States of America, the Secretary of the Interior shall permit a reservation by the grantor of all oil, gas, and other minerals in such land or waters with the right of occupation and *use of so much of the surface of the land* or waters as may be required for the purposes of reasonable development of oil, gas and other minerals, *under such rules and regulations as may be established by the Railroad Commission of the State of Texas*.
>
> Sec. 6 The United States of America, through the Secretary of the Interior, is hereby authorized to purchase, condemn, receive, hold and acquire title to the surface estate of any land not owned by the

argue that because Plaintiffs were not the grantors of the surface estate or successors in title, the restrictions on federal authority found in the Texas Consent Statute—to the extent it imposes any restrictions at all—do not extend to protect the Plaintiffs' access to their subsurface mineral estate. However, the Court already addressed this issue and concluded that the Texas Consent Statute was passed with the clear intention of protecting *all* mineral interests underlying the Park's surface estate. *See* Dkt. No. 50 at 28-29 ("The Texas Consent Statute, when viewed in whole, reveals that the mineral rights beneath the Park would stay in state and private hands, and the NPS would allow continued surface access to those interests."). The Defendants' argument does nothing to sway the Court's conclusion. As the Plaintiffs point out, the Defendants' regulatory framework—if adopted—would leave the Park in a situation in which it would be governed in checkerboard fashion, with portions of the Park being subject to the most heavy-handed of the Secretary's regulations and portions of it not to be so controlled, depending on how and when the mineral estate was severed from the surface estate. There is nothing before the Court indicating that the United States Congress or Texas Legislature desired such an unusual result.

The Defendants' next contention, that the conveyance of state-owned lands from Texas to the United States could not limit the Secretary's authority to regulate lands the federal government later acquired from private parties, is also unavailing. This argument focuses exclusively on the language found in the 1963 Deed that conveyed the state lands to the United States. The Defendants'

---

state in the area above-described as the Padre Island National Seashore for use as a recreational park; provided that the acquisition of lands in such area *shall not deprive the grantor or successor in title of the right of ingress and egress* for the purpose of exploring for, developing, processing, storing and transporting minerals from beneath said lands and waters with the right of housing employees for such purposes. The same reservations and regulations enumerated in Section 3 hereof, relating to civil and criminal jurisdiction, process, levy and collection of taxes, mineral development, and voting rights, shall apply to all lands acquired by the United States of America under this Section.

TEX. CIV. STAT. ANN. art. 6077t at §§ 3, 6 (Vernon 1970) (emphasis added).

second argument, in stark contrast with its first, completely ignores the Texas Consent Statute. It is uncontested that the 1963 Deed merely conveyed state lands. The Texas Consent Statute, however, operates much more broadly than the 1963 Deed. The State of Texas—via the Texas Consent Statute—qualified its acquiescence to the federal government's acquiring Park lands by implementing restrictions on federal authority aimed at protecting access to subsurface mineral interests, be they privately or state-owned. The federal government agreed and entered into this arrangement—presumably to avoid the expense of purchasing or otherwise acquiring both the surface and mineral estates within the Park's boundaries—and the Court will recognize and respect the limitations contained therein.

The Defendants' third and final argument differs little from their second. Again turning a blind eye to the Texas Consent Statute and instead focusing on the 1963 Deed and a 1980 letter signed by then Texas Governor William P. Clements, the Defendants maintain that these documents preclude a finding that federal authority over Park lands can be limited. As stated, the Texas Consent Statute reveals that—in exchange for allowing the United States to establish a national park on its land—Texas reserved in itself and other private mineral interest holders access to the subsurface minerals made subject of this dispute.

The Court wishes to make clear, if it has not already done so, that the federal government is not wholly devoid of regulatory authority over the surface estate comprising the Park. The Court's ruling is merely that certain provisions of the 2001 Plan—specifically those which close certain areas of the Park to oil and gas operations or otherwise deprive the Plaintiffs' rights of ingress and egress for the purpose of developing their mineral interests—are in violation of the cession legislation giving rise to the Park's establishment.

**Conclusion**

The Defendants have not directed the Court to an error of law or fact justifying the alteration or amendment of its prior ruling and judgment. Instead, the current motion sets forth arguments made before the ruling and judgment issued and that were considered and rejected by the Court. Accordingly, Defendants' Motion to Alter or Amend Judgment (Dkt. No. 52) is hereby **DENIED**.

It is so **ORDERED**.

**SIGNED** on this 16th day of December, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE